Case from the Court of Federal Claims, patent case, two trademark cases, a government employee case and a veteran's case, full range of our jurisdiction. One of the trademark cases, an employee case and a veteran case will be submitted on the briefs and not argued. The first argued case is the Hopi Tribe v. United States, 2014, 5018, Mr. Goodstein of Goodstein. Yes, Your Honor. Michael Goodstein. Goodstein, please. I'm here to be appellant. Please proceed. The Hopi Tribe, with me is Anne Lynch. Good morning, Your Honors, Counsel. Five Hopi villages currently are plagued with drinking water that is unfit for use and that doesn't meet the minimum federal standards. These villages were provided a substandard drinking water resource by the United States, their trustee for water rights. These villages are today, currently... You're saying the government provides the water? Yes, Your Honor. These villages have water systems that were designed, constructed, installed and initially operated by the United States. We expected those systems to be sound and safe and in reliance on that, these Hopi villages have used these systems for a number of years. They are installed in arsenic contaminated groundwater. That contaminated water source is currently the only permanent source of drinking water for these villages. The nearest source of usable water is over 10 miles away. The Hopi Tribe is incurring millions of dollars in damages as a result. Why is the federal government responsible for that? Your Honor, in light of the central role of the United States as the keeper of Hopi water rights, as their trustee for water rights, as established by the laws that set up the reservation, the 1885 law, 1882 law, I'm sorry Your Honor, and the congressional enactment of 1958. The way I read the executive order of 1882, simply withdraws the land from settlement and sale and sets it apart for use in occupancy, doesn't say anything about water. The lands described in the executive order dated December 16, 1882 are hereby declared to be held by the United States in trust for the Hopi Indians. So, the word trust is used in there, combined with the Winters Doctrine, Winters versus U.S., the U.S. has a fiduciary duty of holding adequate water rights in trust for use by the Hopi Tribe's reservation. This is not in dispute. This was admitted by the United States below. There is a particular trust responsibility with specific fiduciary duties prescribed by law, as provided in that trust, setting up the reservation, combined with the Winters Doctrine. Where is it provided that they're responsible for water? The Winters Doctrine, Your Honor, as we understand it, held that when the United States sets up a reservation and holds it in trust, it is required to, and it's understood inherent in that trust relationship, is the provision of adequate water to meet the needs of the reservation. And it is that Winters Doctrine, that specific trust duty, that was overlooked completely by the court below. The court- Is there something in Winters that suggests the duty also includes the quality of the water, rather than just amounts of water? Your Honor, we submit that quality inevitably affects the availability and the quantity. That's our understanding. That's our experience. Obviously, now we have water that's unfit for use, even though there's water there. The quality of it makes it unfit for use. We cited the Gila Valley Irrigation District case, the Ninth Circuit case, which held that a tribe's winter rights included a quality component. So in order for the water to be useful, if it's cost prohibitive, it can't be considered as adequate to meet the needs of the reservation. And so we, inherent in our claim, is that quality affects availability and quantity. There's direct precedential support for the Hopi tribe's position here. We've cited them in our briefs. In the area of water rights, the Fort Mojave Indian Tribe case, held exactly as the Hopi tribe, identified a basis for jurisdiction in the claims court. That case was litigated in the claims court. It was affirmed by this court. Breaches were not found, but jurisdiction was found. The U.S., in that case, was actively managing and asserting water rights claims for the Fort Mojave Indian Tribe. And just like for the Hopi tribe here, they are asserting those claims in court. And all otherwise involved in the control, the management, the provision of water on the reservation, sufficient to establish jurisdiction here. In the area of specific control and use of the trust race, we cited the White Mountain Apache case. That's a case where the U.S. held and used Fort Apache. They were held to be responsible for the cost of rehabilitation of that trust race. Here the U.S. has actively controlled, designed the water systems, and is also actively using the water resources themselves, running the village of King's Canyon, which is one of the five Hopi villages that are affected, and the water systems for several Hopi schools that were defectively designed by putting them into arsenic-rich portions of the aquifer. By the U.S. taking control and also using the trust race in combination with the specific fiduciary duties under the Winters Doctrine and under the establishment of the reservation, there is jurisdiction in the claims court. Didn't the Supreme Court hold that control isn't enough? Well, we're using control in combination with the specific fiduciary duties required by the Winters Doctrine and required by the designation and establishment of the reservation and holding the reservation in trust. Holding the reservation in trust, inherent in that establishment of the reservation in trust, is holding the water rights in trust and providing sufficient water to meet the needs of the reservation. Congress recognizes that when it establishes a reservation, it must establish a trust over sufficient water to meet the needs of the reservation, otherwise it's not going to be habitable. So that's long been established and understood that when Congress sets up a reservation in the U.S., it's set up with the water also sufficient to meet the needs of the reservation. We are then using extensive... When you say it's long established, is that just the Winters Doctrine you're talking about? Yes, Your Honor, and cases appalling it. It just seems to me that the Winters Doctrine doesn't talk about water quality and managing the water quality in trust, but it talks about making sure that others can't abortion the water or take away the rights of the water. Well, the Gila Valley case that we cited, that Ninth Circuit case, applies the Winters Doctrine to water quality, and so that's the authority that we cite for quality being inevitably involved in availability and quantity. It just seems like you're asking us to take a step that the Supreme Court has been unwilling to take in looking at this bare trust language and not only graft on what you call the Winters Doctrine, but an even further expansion of the Winters Doctrine by the Ninth Circuit. Well, the Supreme Court hasn't addressed this particular issue. What they've addressed are... ...the executive order and the statute. It's very much like language that the Supreme Court has found doesn't establish a money mandating obligation. In Mitchell 1 and in, I'm going to say this wrong, Pico-Rilla-Apache... Chipping Rule. Yeah, I mean, those cases seem to look at precisely this kind of language and say that's not enough. There has to be in the executive order or in the statute, not in some other way of not money mandating statutes, but in the exact trust language itself, some further indication of a specific fiduciary duty like you had in Dwight-Apache, I think. Yeah. In Mitchell 1, they were looking at the general laminate, so very general, not specific duties. Those individual trust accounts were held by the Indian Allottee and the government had a reserved role, not an active central role. We're closer to Mitchell 2 in our case because we have a specific fiduciary duty under the Winters Doctrine to maintain water sufficient to meet the needs of the reservation. We think that's more than a bare trust. It's been demonstrated to be more than a bare trust in the cases that we've cited like the Fort Mojave case, and then we think we fall into the White Mound-Apache case. There is specific fiduciary duties. But that's only if we agree with the Ninth Circuit's interpretation of the Winters Doctrine. Yes, Your Honor. We think that's an important component. The Winters Doctrine and its application to quality of water as well as quantity and availability is an important component of our case. Yes, Your Honor. Mr. Woodstein, you wanted to save five minutes. You can continue now or save it as you wish. Yes, I'll save it for rebuttal, Your Honor. Thank you. Ms. Durkee. Hello, I'm Ellen Durkee for the United States. This case turns on application of a clear two-part test imposed by the Supreme Court. The Supreme Court has held that in order to invoke jurisdiction under the Indian Tucker Act for a breach of trust claim, first a tribe must show a substantive source of law and statute or regulation that imposes the specific fiduciary duties that it contends that the government has failed to perform. The Supreme Court has instructed that this threshold inquiry must focus on quote, specific rights creating or duty imposing statutory or regulatory discretion. Do you agree that the Winters Doctrine can be read into this very general trust language? Putting aside the question of how far it can be extended, do you agree that it applies to modify this kind of fair trust language? Well, I don't think the Act of 1958 addresses, you know, subsumes the Winter Rights Doctrine into it. I mean, it's a common law doctrine. I'm not sure that's answering my question. I'm sorry. So, can we assume that when the 58th statute incorporated the executive order and said that the lands will be held in trust, that pursuant to the Winters Doctrine, it meant the lands and the water should be held in trust? I don't know that you can assume that, but I can tell you that even if you assume it, and even if it expressly stated... So, the government doesn't have, is not conceding that the Winters Doctrine applies at all to this executive order and statute?  I'm sorry. That's what I'm trying to get at. So, when we look at this statute and it says land, it means land and water rights pursuant to the Winters Doctrine. Well... Let's just assume it does. Okay, let's assume it does. I think I would be more comfortable with that if possible, because I didn't flesh all of that out before. So, instead of the water quality case we have here, suppose some third party was diverting water from the reservation, and it seems like under the Winters Doctrine, the United States has a right and an obligation to protect that water in trust for the tribe. If they didn't somehow sue that third party or otherwise get them to stop diverting it, would that be enough to have the Court of Federal Claims action for the diversion of water? Well, I think there's a... The United... The Winters Doctrine... I mean, if... May I ask you... You want to know whether that would be enough? I would say not necessarily, because it assumes that the United States has an obligation to sue third parties, and there is an element... Well, isn't that the trust obligation? Let me make it even more simple, so we don't have to talk about water rights and winters. Suppose a neighboring farmer came in and fenced off a portion of the tribal land, and essentially, you know, I won't use words to characterize it, but took it over, and the Indian tribe went to the government and said, this farmer is impinging on our land, you're the trustee, you need to do something about it. And the United States didn't. Could that be a Tucker Act claim in the Court of Federal Claims? So, as I understand the question, it's basically saying there's a trespasser on tribal property, does the United States have an obligation as a trustee to remove that trespasser? And my hesitation is because I don't know what kind of prosecutorial discretion might be put forward, but... Yes, I mean, the United States holds that title, and just as it holds title to the water rights, but it doesn't bring with those kinds of holding the trust. Let's assume it's subsumed, we can even assume that the Act of 1958 expressly stated water rights are held in trust. That is not... That does not impose any specific management duties. It's a bare trust. It's exactly like Mitchell 1. It's exactly like Navajo 1. I mean, in both cases, the resources were different. In Mitchell 1, it was timber resources, and it was assumed that was subsumed within the word land. And in the Navajo case, it was coal resources, and it was assumed that was subsumed within the word land when land is held in trust. But in neither case was that enough to impose a fiduciary obligation sufficient for the jurisdiction of the Indian Tucker Act. So your view is even if winters applies, and even if winters can be read to include some kind of water quality thing, without some further language suggestion that the United States has an obligation to manage the lands or some other thing in the language of the trust language, then that's not specific enough for the core federal claims. That is correct. That is our position. The winner's right doctrine, the water rights that are created by the winner's rights doctrine are no different in terms of, they're a bare trust just like saying land is held in trust. There's no difference. I mean, there's many issues, I think. This is a fundamental obstacle for them. But there's also the aspect that the water right is somewhat unique, and I think they have misconceived what a winner's right is. And I don't want to make what is really a fairly simple and straightforward case more confusing than it needs to be. But I do think I'd like to make the one point that they keep sort of assuming in their argument that a winner's right, a reserved water right, is title to like a body of water or to water itself. Actually, it is a creation of a water right, and then the appropriation states in the Western United States, that right is a right to use. It's not a possessive right of water, per se. And that's really what they want. They want water, per se. And they're trying to use reserved water rights in a way that really doesn't apply here. The other thing that this case is really about, it's not about reserved water rights. It's really about infrastructure and water systems. The tribes' water rights have not been infringed upon at all. They still hold the same title to them. And in fact, everyone recognizes the undisputed fact is that there is water available on the reservation as part of the reserved water rights that falls under the revised arsenic standard. The problem is getting it from where they want it, the water source, to these particular villages. It is true, though, that the United States built these wells for the tribe, right? Yes, some of them. I don't know that they built all of them. Is there any effort for the United States to do something to clean up the water supply on this tribe's land? No, I mean, the arsenic in the water supply is natural. Right, no, I understand. That was probably not phrased properly. But given that they built the first set of wells, is the United States doing anything to look at new wells, Oh, absolutely. I hope this is apparent in our brief, but I'll emphasize it here. It's not as if we believe this is not a worthy cause, or that the United States has said, we're not going to help the tribe. But what we are saying is it's not a fiduciary obligation. That's not where the help comes from. There are several agencies, the Indian Health Service, EPA, the Department of the Interior, have all been providing assistance to help develop this tribal water project, the HAMP. The authority to do this and the funds to do this all come from lump sum discretionary funds, for example, the Indian Sanitary Facilities Act. Those statutes do not create any fiduciary obligations. And they have recognized that. They concede in their reply brief. They're not basing, they're not saying that those statutes create any obligations or the substance or source of law for them. So the government is acting to help Hopi tribe with the water, but you're arguing that they don't have a legal obligation under the trust documents. They don't have a legal obligation that would trigger, that would provide jurisdiction for an Indian Tuffer Act claim. I think if you step back and think about this, as a matter of public policy, Congress addresses many communal issues on reservations, health, safety, housing, employment. But these are all, these are programs that by providing assistance do not create then an obligation, a fiduciary obligation to continue in perpetuity providing this assistance. And, you know, the Indian Facilities Sanitary Act, I mean, again, going back to sort of the equitable arguments that they're trying to make. First of all, I think we all know that the legal standard cannot be bent based on, you know, equitable standard because of a particular desire to make a particular project happen. But the other, I guess the aspects that they're sort of glossing over, when these wells were drilled, it was, you know, 50, 60 years ago, the arsenic standard was different then. And no one is saying that, you know, they were out of compliance then. The problem that was created here was after these water,  tribal entities, the standard was revised. Your position doesn't depend on that, does it? No, it does not, actually. No, that's not. I guess I'm trying to address the equities. I'm not saying that that would make any difference whatsoever. I mean, Mitchell, I mean, the Navajo cases, Navajo II in particular says, you have to find the duty and the statute of regulation and it doesn't, and control alone cannot be a basis for creating a fiduciary duty or getting over the initial threshold. And that's really what their argument about, you know, who installed it and so on comes down to, is they're saying because you controlled the wells or, you know, some part of the system, then for, in perpetuity, you have to keep, you know, coming in and upgrading it, even though these public water systems are actually owned and operated by the tribal entities at this point. And, again, I guess, you know, I did use the words of the Court of Federal Claims, but this is really a fairly simple and straightforward case as far as the, you know, the standards of the Tucker Act claim. And here they're, you know, they've tried to put it into the White Mountain Apache or the Mitchell II, but really there's actually no textual basis at all here and there are certainly not the kind, you know, the White Mountain Apache was a particularly unique statute and the Supreme Court made clear it was a simultaneous in the same statute appearance of saying that the property was taken into trust and the United States could then use the property. We don't have any... Is the United States using any of this property? No. No? The BIA is not on the land at all? Well, the BIA... I guess it depends on what... I mean, this goes back to why water rights, you have to grapple with what is a water right? Because a water right doesn't mean using water. I mean, just because if the BIA is using water, it's not using the tribe's, you know, property per se. Now, the Keeps Canyon, one of the public water systems... Land comes with water, right? You're saying just because they're using the water, they're not really using the property? Right. A water right is a right to use. It is not an exclusive right to use of water. So, the way it works is that, you know, a party with a water right, they can take water out of a river, for example. It doesn't mean that other parties cannot take water out of the river. If there is a conflict, such that there's not enough water to satisfy everyone, then the priority date, the party with the senior priority date gets to use the water and the junior appropriator may be... I'm trying to line up the facts here with the facts of White Mountain Apache, where you said the government was using some of the land and here you can argue that BIA is using some of the land as well. Well, the BIA... I mean, again, it goes back... I mean, water... The property is not water per se. The trust property, the trust is the water right. So, the United States can have its own rights to water. It doesn't mean it's trust property per se. The BIA... But we're not in a position of conflict, you know. They don't even want the water that the BIA is using. I mean, the BIA... I thought the water the BIA is using is now the clean water, right? The government fixed that well and elected not to fix the other wells that the Hopi tribe was using. The reason the BIA fixed... put in a treatment system and it's the... So, the BIA has clean EPA compliant water? For the community where the BIA owns the public water system. And the reason is because the Safe Drinking Water Act requires an owner or operator to comply with water quality standards. So, the BIA is complying not in its role as trustee of Indian resources. It's complying because of its role as an owner and operator of a public water system in a sovereign class. And that's, you know... My time is up, but I think, you know, when tribes have the right to decide how to use their water rights, this court has ruled that the United States is not responsible for building irrigation systems and this case is no different. The tribe gets to decide how to use its water rights and therefore it's not like any of the other cases that they're talking about where the actual trust property was controlled by the United States and they couldn't decide how to use it. Thank you, Ms. Durfee. Mr. Goodstein has some rebuttal time. Just show the four minutes. Thank you, Your Honor. The U.S. is using the trust race here. As we put in our papers below and in our briefs, the U.S. operates the Keynes Canyon system, Hopi High School, Second Mesa Day School in the same area as the affected villages. Yes, they put in treatment on their systems but left the affected villages to fend for themselves. But that's not the issue, is it? Well, the U.S. made... We think it is the issue, Your Honor. It's not a question of equity. It's a question of jurisdiction in the claims court with respect to the nature of the trust. The first step, Your Honor, as we set out in our brief, is satisfied by the trust relationship that's set up for the reservation and the Winters Doctrine, which provides that trust relationship, applies to water resources. We interpret that as a specific fiduciary duty, a specific trust relationship. Once you get past that first step, then you can look at the elaborate control and the elaborate involvement of the United States in the situation here where they installed these water systems, made commitments to the affected villages... If we were talking about water rights, if we were talking about land rights, would the language of this trust be specific enough to be a mandating statute? Not alone, but the specific mandate under the Winters Doctrine is for water sufficient... That's not what I'm asking you. ...to meet the needs of the reservation. I'm sorry, Your Honor. I misunderstood. Well, I'm asking... Talking about land, just looking at the executive order and the statute, that doesn't imply a specific trust relationship, does it? Not alone, no. What do you mean, not alone? Well, as in Mitchell 2, that relationship in combination with other regulations... Well, Mitchell 2 had more specific language... Yes. ...and trust provisions themselves. Yes, so just the holding... So there's not specific provisions here? Holding the land in trust alone is not sufficient, Your Honor. What we're presenting... But you're saying that winter somehow is different for water than for land. Yes, Your Honor, because it requires a specific... Why doesn't it just suggest that water rights go along with land rights and that even if it doesn't mention water rights, the water rights are also held in trust? Why isn't that the same kind of bare-bones trust? Because it specifies an amount and a requirement that the water meet the needs of the reservation. So as the Claims Court took jurisdiction in the Fort Mojave case, that is under the Winters Doctrine, that's sufficient specificity to get through the first step. The Winters Doctrine, remind me, the Winters Doctrine is a Supreme Court case, but what context is that in? Is it in a context suggesting that that's enough to establish a specific trust? It was a reservation set up, yes, Your Honor, it was a reservation set up in Montana, I believe, and it was only viable with water brought in for irrigation purposes, and the court said that, yes, that water that's necessary to meet the needs of the reservation is reserved and is protected and held in trust. But that's what I get. I understand. It's keeping it in trust and preserving it, but the Mitchell 2 case, I'm getting all these cases mixed up, but the ones that find specific language don't just find it holding the land or the water in trust for use. It implies some further obligation on the United States when it uses the property. The Fort Mojave case is a good example, Your Honor, where the Winters Doctrine holding water for specific purposes of the reservation, for the specific purposes of the reservation, and sufficient quantity and quality and availability is inherent in the Winters Doctrine. Two other points, and then I'll say this. Your time has expired. Mr. Quidstein, one final thought? Yes. The posture of the case on a motion to dismiss assumes all the facts in the light most favorable to the Hopi tribe, so we ask that the court keep that in mind. Thank you, Mr. Quidstein.